CLARA K. OATLEY *vs.* CALLENDER, McAUSLAN & TROUP COMPANY.

FEBRUARY 7, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a petition for review brought by an injured employee against her employer under the provisions of the workmen's compensation act, general laws 1938, chapter 300, article III, §13, as amended. After a hearing in the superior court a justice thereof denied and dismissed the petition and the petitioner thereupon duly prosecuted her appeal to this court.

In the petition, which was filed February 3, 1944, it is alleged that the employee "is still suffering from the injury to her back sustained Feb. 21, 1941 and is now totally incapacitated and is in need of further medical treatment." The agreement which is sought to be reviewed is described as the "Final Compensation Agreement and Settlement Receipt", and was signed by the parties in March, 1941 and approved by the director of labor April 9, 1941.

The evidence shows that the petitioner, who had been employed for several years as a saleslady in the respondent's shoe department, was injured on February 21, 1941 in the course of her employment while moving a carton containing thirty-six pairs of women's shoes. She was at that time pulling the carton toward her along the floor when her hand slipped and she fell, injuring her back. She continued to work until noontime of the following day, when she went home because she did not feel well.

On February 24 the petitioner consulted Dr. Vincent A. Cianci, who diagnosed her injury as a sprain of the right sacroiliac region and he prescribed diathermy, massage and a back support. He treated the petitioner at his office frequently until March 12, 1941, and occasionally thereafter

up to October, 1943. Following that date and up to the time of the trial in 1946 she consulted him oftener and he treated her about twice a month in the same general manner and by administering bakes. In the summer and fall of 1944 he also treated her successfully for phlebitis of her right leg. On June 20, 1944 an X-ray examination was made of the petitioner's back by Dr. William J. Butler. This examination was negative in so far as any evidence of fracture, dislocation or intrinsic bone disease was concerned. The doctor's report states that "The sacroiliac joints show minimal bilateral hypertrophic changes, consistent with age." From the evidence it appears that the petitioner was a married woman fifty-three years of age at the time of the trial in 1946.

After her accident the petitioner, on March 5, 1941, returned to her ordinary and usual work with the respondent and continued doing such work, except for occasional short absences, until September 8, 1943, a period of two and one half years. On the date last mentioned she left the respondent's employment permanently. She testified that she took this action because of the continuing trouble with her back. The respondent, however, contends that the evidence shows that she left because they would not adjust her working hours so that she could also take a second job on the evening shift at the Monowatt Electric Company, which was completing war contracts. She had been employed there in August, 1943 for a short time during her vacation from the respondent's store. On the above disputed question the petitioner testified in cross-examination as follows: "Q. Do you care to tell us anything further? A. Well, I asked for another job before I went in the Monowatt and he (her supervisor) wouldn't give it to me, so I told him if he didn't let me go at half past five, I would get through Wednesday night. . . . Q. And they didn't let you go, so you got through? A. Yes, sir." A few days after leaving the respondent's employment the petitioner started working as a clerk for John the Shoeman, Inc., and remained there for about nine

days. During this same period she also worked for the Monowatt Electric Company for a short time on the night shift. The petitioner was employed in these two establishments up to September 25, 1943, when she ceased working altogether. Since then she has been employed only one day, on January 3, 1946, as a saleslady in a department store.

The final decree entered in the superior court contained the following findings of fact: "that petitioner has not shown by a fair preponderance of the evidence that she is incapacitated for work, or if unable to do the kind of work which she did at the time of said accident and for a period of two and one-half years thereafter, such incapacity is the result of the accident of February 21, 1941."

General laws 1938, chap. 300, art. III, §6, provides that the final decree entered in a workmen's compensation case "shall contain findings of fact which, in the absence of fraud, shall be conclusive." No question of fraud is raised in the instant case. Under well-established law it is required that such findings, to be valid, shall be supported by legal evidence. Assuming, without deciding, that the petition is properly brought, the question is whether there is legal evidence to support the findings of fact in the decree.

A consideration of the evidence and exhibits, as bearing upon the above findings, shows the following situation. The petitioner testified in substance that she was unable to work because of the hereinbefore-described injury to her back. While her attending physician, Dr. Cianci, testified that in his opinion she could not do heavy work but probably could do a little light work occasionally, he nevertheless was later asked: "Is she able to do light work, such as a saleslady on the floor, requiring walking, standing on her feet a full day?" To that question he made the following answer in part: "I am unable to give you any definite answer to that question because I think that the patients themselves will be able to answer that better than I can."

Doctor G. Edward Crane, a witness for the respondent, examined the petitioner February 28, 1946, after obtaining

from her a statement concerning the accident and the subsequent history of the case. He testified in general as to the nature of his examination and to the fact that the petitioner complained of pain, or rather a pulling sensation, in her right lower back in the region of the so-called sacroiliac joint when making certain bending and leg movements. The witness also testified that it could be assumed that when the petitioner's hand slipped from the carton she may quite possibly have had a straining injury to the muscles of her back, but that the hypertrophic changes in her lumbar spine, which were revealed in the X-ray photographs taken by Dr. Butler, could not be attributed to the accident, as arthritis is not caused, in the belief of the witness, by one straining injury.

The doctor then made the following statement in his testimony: "It was my impression that her complaint of pain in her back could be attributed to the early arthritic changes in her back, which are common in an individual over fifty. Also her limitation of motion in her right knee would tend to exert strain on her back in walking, because she couldn't straighten out her right knee fully. And these two factors primarily could give her the pain in her back that she described. I could not find any objective evidence that there was any residual straining injury to the muscles of her back, or what one would call an aggravation of arthritis that existed for a period of four or five years. So in making a concrete diagnosis I would say that she had a residual phlebitis of her right lower extremity; limitation of motion in her right knee, which was probably of arthritic origin; and minimal hypertrophic arthritis of her lumbar spine."

In regard to her ability to work Dr. Crane further testified as follows in response to questions from the respondent's attorney: "A. I do not believe that a person who had worked for thirty-one months after an injury and then is unable to work, is disabled from an injury that may have occurred thirty-one months prior to the time of disability. Q. So that in your opinion, then, there was no disability

on February 28th, 1946, which could be attributed to this accident of February 21st, 1941; is that right? A. I do not believe that the straining injury that may have occurred by pulling on the case would be the cause of her inability to work *at that time.* (italics ours) Q. Now, Doctor, from your examination on February 28th, 1946, do you have any opinion as to whether or not she was able to work at that time? A. In determining her ability to work, her complaints of pain were the outstanding feature of the examination. She does have organic findings of residual phlebitis in her right thigh and limitation of motion in her right knee. I would say that these would cause her some difficulty. But understanding that her work is that of a clerk, I would think that she would be able to do that type of work." And in cross-examination he stated, with reference to the work of a saleslady in a shoe department, that "it would be my opinion that when I saw this woman in February, 1946, with a lack of spasm in the muscles of her back and the amount of motion that she had and the manner in which she walked, I would believe that she would be able to do that."

Doctor Roland Hammond, who, as an impartial medical examiner appointed by the department of labor, made an examination of the petitioner December 19, 1944, testified as follows in response to questions by the petitioner's attorney: "Q. Now, from your examinations, Doctor, including the X-ray examination, did you form an opinion as to Mrs. Oatley's condition and ability to work? A. I found a distinct difference in the limitation of movements of the pelvic and hip joint on the right side that were not present on the left; with atrophy, or wasting, of the soft tissues over the right side; and X-ray changes which indicated an arthritis, particularly limited to the right side, where the pain and limitation of motion was found. At the time I examined her I felt she was unable to work."

The witness, however, stated that he could not express an opinion as to the petitioner's ability to work at the time of the trial. Moreover, in cross-examination, he gave the

following testimony: "Q. And you also received a history, Doctor, that when she left her place of employment in August of 1943, that she left that place of employment so that she could go to work on two jobs at once? A. I didn't receive any such history. Q. You didn't receive that history. Would the fact that she could work during all that time, with a little time out, considering her age in that, and then leave and go to work on two jobs at once, be of any significance to you? . . . During the two and a half years she was working, she was working as a shoe clerk. When she left that job she went to work as a shoe clerk in another store, but also took a victory job on a night shift. A. Well, it would seem as though she had recovered if she was able to do two such jobs."

After a careful consideration of all the evidence relating to the findings of fact under consideration, part of which evidence we have just referred to in detail, we are of the opinion that there was legal evidence before the trial justice to support his findings. Under the existing circumstances such findings are conclusive under the act.

One further matter remains to be considered. In her reasons of appeal the petitioner alleges that the trial justice erred in refusing to grant her motion for the appointment of an impartial medical examiner. The transcript shows that this motion was first made at the conclusion of the petitioner's case and was then withdrawn. It was renewed after the respondent's evidence was concluded. In the motion the petitioner recommended the appointment of Dr. Roland Hammond, since he had already examined her once. After argument the trial justice denied the motion. With the consent of the court the petitioner then reopened her case and offered Dr. Hammond as her witness, and he testified under direct and cross-examination. At the conclusion of all the evidence in the case, the petitioner moved definitely that Dr. Hammond be appointed an impartial medical examiner. The trial justice denied the motion.

General laws 1938, chap. 300, art. II, §21, as amended,

gives any justice of the superior court the power to appoint such an examiner. The petitioner asked for the appointment of a particular doctor as such an examiner, which was denied; but it appears that such doctor actually testified for the petitioner as to an examination of her which he had previously made. However, in any event, it is our opinion that the granting of such a motion rests within the sound judicial discretion of the justice to whom the motion is made. Unless it is shown that he has abused his discretion we will not interfere with his decision on the motion. Under all the circumstances in the instant case we find no abuse of that discretion in the refusal of the trial justice to grant the petitioner's motion and, therefore, we cannot say that such ruling was erroneous.

In view of the above-mentioned conclusions, it is unnecessary for us to consider and decide any questions raised by the finding in the final decree respecting the proper bringing of the petition.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, in so far as it relates to the portion thereof passed upon in this opinion, and the cause is remanded to the superior court for further proceedings.

*Arthur N. Votolato,* for petitioner.

*Sherwood & Clifford, Sidney Clifford,* for respondent.